## PAXTON v. STATE.

### Opinion delivered September 27, 1920.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.—In a prosecution for murder, evidence *held* sufficient to sustain conviction of manslaughter.

2. HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE.—In a prosecution for homicide, where there was evidence tending to prove that defendant was the aggressor and shot without provocation, an instruction that if defendant, armed with a deadly weapon, sought deceased with a felonious intent to kill, then he can not invoke the law of self-defense was not objectionable as not based on evidence.

3. HOMICIDE—SELF-DEFENSE—INSTRUCTION.—In a homicide case the omission in an instruction on self-defense of the idea that an honest effort to retire from the conflict by the aggressor would justify a killing in self-defense was harmless where there was no evidence whatever of defendant's attempt to retire.

4. CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—The refusal of an instruction covered by those given is not error.

Appeal from Hempstead Circuit Court; *George R. Haynie,* Judge; affirmed.

*Steve Carrigan,* for appellant.

1. It was error to give instruction No. 11 for the State, as there was no evidence upon which to base it. 8 Ark. 183; 23 *Id.* 101; 29 *Id.* 151. It is abstract. 36 *Id.* 641; 42 *Id.* 57. It is prejudicial error to give an instruction based upon a hypothesis unsupported by the evidence. 90 Ark. 104; 117 S. W. 1080; 65 Ark. 222; 72 *Id.* 23; 74 *Id.* 468; 45 S. W. 546; 77 *Id.* 901; 86 *Id.* 289; 96 *Id.* 193; 92 S. W. 864; 112 *Id.* 1082. There was no evidence upon which to base this instruction. 34 Ark. 469; 49 *Id.* 543.

2. It was error to refuse instruction No. 13 asked for defendant. It was plainly the law. 50 Ark. 545; 52

*Id.* 45; 85 S. W. 941; 11 *Id.* 963.  It was also error to refuse No. 14 for defendant.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellee.

1.  Appellant's objections to instruction No. 11 are not well founded when considered in connection with the evidence offered by the State and the authorities cited for appellant are not at all in point.

2.  Instruction No. 13 for appellant was properly refused, as the court gave No. 9 and No. 15, which covered the case, and there was no prejudicial error.  See cases cited for appellant.

McCulloch, C. J.  Appellant was convicted of the crime of manslaughter under an indictment charging him with murder in the first degree in the killing of John Hobson.  Hobson and appellant lived within hailing distance of each other on the same farm, and the shooting occurred at appellant's house early in the morning before daylight on December 22, 1919.  Hobson died from the effects of the wound on January 1, 1920.

The killing was admitted, but appellant endeavored to justify it by proving that it was done in necessary self-defense and to prevent Hobson from committing a criminal assault on his (appellant's) wife.  The proof on the part of the State as to the circumstances of the killing comes in the form of the dying declaration of Hobson.  Two witnesses testified as to the substance of Hobson's statement.  From this statement it appears that Hobson arose early in the morning before daylight to go duck hunting and went by appellant's house to see him about collecting a debt from a man named Johnson over at a stave mill where appellant was working.  When he got to appellant's house Hobson called out at the door, "Hello, Paxton," and appellant's wife answered from within that appellant had stepped out but would return in a few minutes and invited Hobson to come in.  Hobson replied to the woman that he would come in and warm, and did so, and while seated near the stove carried on

a conversation with appellant's wife about the state of his health and her's. In a few moments appellant came to the door and called to his wife to hand him his lantern and she replied telling him to come in and get it; that appellant opened the door and seeing Hobson he said, "Oh, yes, God damn you, I got you where I want you; I'm going to kill you." Hobson replied, asking appellant not to shoot, stating that he had done nothing to provoke him, whereupon appellant fired the gun at Hobson and the shot took effect in Hobson's shoulder. Appellant then took a monkey wrench and beat Hobson over the head with it. Hobson was able to go back to his home and was put to bed by his wife, and, as before stated, died in about ten days from the effects of the wound inflicted by appellant.

Appellant's version of the shooting is different from the narrative given by Hobson in his dying declaration. Appellant testified that before daylight on the morning in question Hobson came to his door and had his gun with him, stating that he was going duck hunting and requested appellant to collect a small amount of money from Johnson at the stave mill. Appellant, according to his testimony, and promised to do this for Hobson, and then invited Hobson to come into the house, but the latter declined. Appellant waited until about daylight, and then left to go to his work at the stave mill about three miles distant. He took his shotgun along with him, as he stated, because he was afraid of "varmints" along the way and also because he had to pass a grave-yard. He testified that after having gone a short distance from his house he heard his dog barking as if a stranger was at the house and went back to his house, and when he opened the door he saw his wife sitting on the side of the bed and that Hobson had hold of her hands and she cried out, "Turn me loose; you turn me loose." Appellant called out to Hobson, when, as he stated, Hobson "reached with his right hand like he was going to get a gun," whereupon appellant fired the shot which took effect in Hobson's shoulder.

Appellant further testified that he laid his gun down on the floor and caught hold of Hobson, and they engaged in a struggle for a wrench which was lying on the floor, but that he (appellant) got the wrench first and hit Hobson several times over the head.

The testimony, viewing it in its strongest light, was abundantly sufficient to sustain a conviction of criminal homicide, even of the highest degree.

The first ground urged for reversal of the judgment is that the court erred in giving instruction No. 11, which reads as follows:

"If you believe from the evidence in this case that the defendant, armed with a deadly weapon, sought the deceased with a felonious intent to kill him, or sought or brought on, or voluntarily entered into, the difficulty with the deceased with the felonious intent to take his life, then the defendant can not invoke the law of self-defense, no matter how imminent the peril in which he found himself placed."

The giving of this instruction was specifically objected to in the trial below on two grounds; one that there was no evidence on which it could be based and the other that the proof in the case showed beyond dispute that when appellant returned to his home deceased was attempting to assault his wife. Neither of the objections urged against this instruction is tenable. There was testimony tending to show that appellant, while armed with a deadly weapon, sought the deceased and brought on the difficulty and shot him with felonious intent to kill. In other words, the proof showed, viewing it in its strongest light, that appellant was the aggressor and shot Hobson without any provocation whatever. It is not correct to say that the proof showed beyond dispute that Hobson was assaulting appellant's wife when the latter returned to his house. The jury might have inferred from appellant's testimony that Hobson was about to make such an assault, but his testimony is in direct conflict with Hobson's narrative in his dying declaration as to the circumstances attending the shooting.

Instruction No. 11 is erroneous as a statement on the law of self-defense for the reason that it omitted the idea that an honest effort to retire from the conflict would have justified a killing in self-defense, but the error of the court in omitting that idea was harmless for the reason that there was no proof at all that there was any attempt on appellant's part to retire from the difficulty as he was, as shown by the State's proof, the aggressor. According to appellant's own testimony, he was not the aggressor in the difficulty, but when he found Hobson in his home about to assault his wife, Hobson attempted to do him violence and he shot him in self-defense. On the other hand, the State's proof tends to show that appellant deliberately and without any provocation whatever shot Hobson while he was sitting by the stove engaged in innocent conversation with appellant's wife.

The next ground urged for reversal is that the court erred in refusing to give appellant's instruction No. 13, which told the jury, in substance, that if Hobson was attempting to rape appellant's wife appellant was justified in shooting him. Conceding that this instruction was in correct form, it was completely covered by two or three other instructions which the court gave, and which certainly covered the subject more completely.

The objection to the court's refusal to give instruction No. 14, which appellant requested, is open to the same answer, for the court gave other instructions which fully and correctly covered the subject.

Affirmed.